UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TACUMA J. M'WANZA-EL,<br><br>     Plaintiff<br><br>v.<br><br>SCOTT DAVIS,<br><br>     Defendant | Case No.: 3:19-cv-00679-MMD -CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 32 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Scott Davis's motion for summary judgment. (ECF Nos. 32, 32-1 to 32-14.) Plaintiff filed a response. (ECF No. 24.) Davis filed a reply. (ECF No. 35.)

After a thorough review, it is recommended that Davis's motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 8.)

The court screened Plaintiff's complaint, and allowed him to proceed with a First Amendment Free Exercise Clause claim against defendant Scott Davis, who is the chaplain at Lovelock Correctional Center (LCC). Plaintiff's claim is based on allegations that he has been a member of the Moorish Science Temple of America Inc. (MSTA) since 1996, and has practiced Islamism since then, but Davis denied him the ability to participate in Ramadan fasting in May and October of 2019, even though Plaintiff sincerely believed he was required to participate in the fasts. (ECF No. 7.)

Davis moves for summary judgment, arguing: Plaintiff's free exercise rights were not violated because Plaintiff was able to freely practice his religion, although he wanted to practice additional aspects of two different religions together, and Davis is entitled to qualified immunity. (ECF No. 32.)

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

1 *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Free Exercise Clause**

    **1. Standard**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment...prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

To implicate the free exercise clause, a prisoner must establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. "The Free Exercise Clause does not require plaintiffs to prove the centrality or consistency of their religious practice: 'It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith.'" *Jones v. Slade,* 23 F.4th 1124, 1145 (9th Cir. 2022) (quoting *Hernandez v. Comm'r of Internal*

*Revenue*, 490 U.S. 680, 689 (1989)). The test is whether the plaintiff sincerely believes the conduct at issue is consistent with his faith. *Id*. (citation omitted).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams,* 791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)).

"Once a claimant demonstrates that the challenged regulation impinges on his sincerely held religious exercise, the burden shifts to the government to show that the regulation is 'reasonably related to legitimate penological interests.'" *Jones,* 23 F.4th at 1144 (quoting *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015)).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court is instructed to utilize the "reasonableness" factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *See O'Lone*, 482 U.S. at 349; *Jones*, 791 F.3d at 1032; *Shakur*, 514 F.3d at 884. "To ensure that courts afford the appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349 (citation omitted).

The *Turner* factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates: (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and

"the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

**2. Facts**

The following facts are not in dispute, unless otherwise noted:

According to NDOC records, Plaintiff was incarcerated within NDOC from May 13, 2011, until June 7, 2017; from July 13, 2018 until May 17, 2020; and then from April 7, 2021, through the present. (ECF No. 32-1.)

Administrative Regulation (AR) 810 governs religious faith group activities and programs within NDOC. (ECF No. 32-5.) AR 810.02 (versions effective September 11, 2017, and July 18, 2019) lists 28 faith groups recognized within NDOC, including Christian/Protestant, Islam/Muslim as well as MSTA. (ECF No. 32-6 at 5; ECF No. 32-7 at 5.) Under NDOC's Faith Group Overview, Islam/Muslim adherents fast during Ramadan from before dawn until after sundown for 29-30 days.[1] (ECF No. 32-6 at 12; ECF No. 32-7 at 12.) MSTA observes fast days for Ramadan from October 1-31 from 7:00 a.m. to 7:00 p.m. (ECF No. 32-6 at 15; ECF No. 32-7 at 15.)

NDOC has a Faith Group Affiliation Declaration Form (DOC 3503), that is to be completed by every inmate who desires to be identified with a specific Faith Group/religious faith. (ECF No. 32-8 at 6.) The form is initially completed upon intake and the information is entered into NDOC's Nevada Offender Tracking Information System (NOTIS) to determine the religious service needs of the inmates. (*Id.* at 11-12.) Inmates are permitted to change their faith

---

[1] The dates vary every year and are determined by the lunar calendar. *See* Ramadan Definition & Meaning | Dictionary.com, Muslim calendar Definition & Meaning | Dictionary.com, last visited April 1, 2022.

group affiliation once every 12 months by completing and submitting DOC 3503, and the changes are documented and updated in NOTIS. (*Id.* at 12.)

According to NDOC records, Plaintiff's faith affiliation was in NDOC's system as Protestant from June 16, 2011, until he was released on June 7, 2017, and it was also reflected as Protestant when he was re-incarcerated on July 13, 2018, until May 16, 2019. (ECF No. 32-3.) Plaintiff disputes that he ever declared his religious faith as Protestant. Instead, he maintains that he became a member of MSTA in 1996 and that since then he has observed Islam.

Plaintiff sent an inmate request form (a "kite") on April 29, 2019, stating that he wanted to participate in Ramadan fasting. Davis denied the request because Plaintiff's faith declaration was Protestant. (ECF No. 32-9 at 14.)

Plaintiff sent a second kite on May 1, 2019, stating that he is a Moslem with MSTA, and not a Protestant, and he practices fasting every year, and asked to be added to the Ramadan list. Davis responded that the system showed that he had been declared Protestant since 2011. He advised Plaintiff to fill out the DOC 3503 form if he wished to change his faith declaration. (ECF No. 32-9 at 15.)

Plaintiff sent a third kite on May 3, 2019, stating that he proclaimed his nationality in 1996, which is why the "El" is on the end of his name. Davis responded that putting "El" on the end of his name is not recognized by NDOC, and future correspondence with that addition would be sent back unanswered. (ECF No. 32-9 at 2, 13.)

Plaintiff sent a fourth kite on May 3, 2019, stating that "El" is the attribute given to him when he proclaimed his nationality with MSTA in 1996. He repeated he is Moorish American and his religion is Islam, not Christian. Davis responded that the El suffix is on the end of his name was proper, per NDOC. He advised, however, that Plaintiff's faith declaration was

Protestant. He denied the last faith declaration change due to the "El" on the end of the name, but that was in error. He asked Plaintiff to resubmit the DOC 3503 form. (ECF No. 32-9 at 12.)

There is a Faith Group Affiliation Declaration Form dated May 17, 2019, which changes Plaintiff's faith group affiliation from Protestant to Islam/Muslim. This was approved by Davis. (ECF No. 32-4 at 2.) Plaintiff maintains that the form had Islam/Muslim pre-written on it; however, he does not dispute that he signed the form.

Plaintiff filed a grievance on this issue on May 3, 2019. He reiterated that he is Moslem, and his religion has been Islam with MSTA since 1996. He asked to be able to participate in Ramadan. Plaintiff maintained that he had never proclaimed to be Protestant, and that Davis denied him participation in Ramadan even though he had filled out the faith declaration form. Plaintiff was told in response that he had been denied participation in Ramadan because his records since 2011 said that he declared as Protestant, but his faith declaration had now been changed to Islam/Muslim. While it was too late to participate in Ramadan this year, Plaintiff was advised he could do so the following year. (ECF No. 32-10.)

The court takes judicial notice of the fact that Ramadan was observed for 30 days starting on May 6 in 2019.[2]

Plaintiff sent a kite on September 14, 2019, to be put on the list for the upcoming fast with the MSTA for October, stating "I am a Moor." Davis denied his request, stating that Plaintiff just changed his faith declaration to Islam/Muslim in May, and only those declared MSTA get to participate in the month-long fast in October for Ramadan. (ECF No. 32-9 at 10.)

Plaintiff sent another request on September 17, 2019, stating that Davis was depriving him of his right to practice his religion. He advised Davis that he has been MSTA since 1996,

---

[2] *See* Ramadan: What it is, how it began, how it's observed | CNN, last visited April 1, 2022.

and regardless of whether he changed his faith declaration, it is nonsensical to not allow him to participate in the MSTA fast in October. Davis responded that Plaintiff's faith declaration was Muslim/Islam, which has a different Ramadan than MSTA. (ECF No. 32-9 at 11.)

Plaintiff sent a request on September 18, 2019, and advised Davis to look at the MSTA calendar to see that they, as Moslems, fast in the month of October. He advised Davis that he had proclaimed his nationality with MSTA in 1996, his religion is Islam, and he asked to be put on the list to participate in the MSTA fast for October. (ECF No. 32-9 at 8.) Davis responded that Plaintiff's faith declaration is Islam/Muslim, and in AR 810.2, the Ramadan fast for Islam/Muslim inmates is not in October. If Plaintiff's faith declaration was MSTA, AR 810.2 allows for Ramadan to be observed from October 1-31. Davis explained that AR 810.2 has different distinctions for Islam/Muslim and MSTA faith declarations. Therefore, Davis denied Plaintiff's request to be on the list for MSTA fast for Ramadan for 2019. (ECF No. 32-9 at 9.)

Plaintiff sent a kite on September 22, 2019, stating that he is Moorish American and a Moslem, and has been a Moab since 1996. He asked to participate in the October fast. (ECF No. 32-9 at 7.) Davis responded that as long as his faith declaration is Islam/Muslim and not MSTA, he is not allowed to participate in the October Ramadan, and noted that both groups have their own Ramadan per AR 810.2. (ECF No. 32-9 at 7.)

Plaintiff sent a kite on September 23, 2019, explaining that MSTA is his proclaimed nationality, and is religion is Islamism and he is Moslem. He said that he proclaimed his MSTA nationality in 1996. He notified Davis that the "El" at the end of his name is a tribal name that can only be given by a grand sheik. (ECF No. 32-9 at 5.) Davis responded that NDOC does not recognize Moslem as a faith, and that Plaintiff's faith declaration was changed to Islam/Muslim so that he could participate in Islam Ramadan. Davis explained that as long as the faith

9

declaration states that he is declared Islam/Muslim, he could not grant the request to participate in the MSTA Ramadan. (ECF No. 32-9 at 6.)

Davis also provided a response on September 25, 2019, stating that those who are allowed to partake in the month-long fast of Ramadan must have a faith declaration in NOTIS as MSTA. He advised that Plaintiff's request was denied. (ECF No. 32-9 at 4.)

Plaintiff sent a kite to Davis on September 27, 2019, stating that Islam is his religion, and Moorish Science is not a religion but an organization, and is his nationality. Plaintiff reiterated that he publicly proclaimed his nationality in 1996. (ECF No. 32-9 at 3.)

**3. Analysis**

Here, Davis argues that Plaintiff was originally declared Protestant, so he could not participate in the May/June 2019 Islam/Muslim observance of Ramadan, and then he changed his faith affiliation to Islam/Muslim, so he could not participate in the MSTA observance of Ramadan in October. According to Davis, an inmate's faith determines which Ramadan they can practice, but they cannot practice both Ramadans. Since AR 810 allows an inmate to change his faith declaration once every 12 months, Plaintiff could not change his faith declaration to MSTA to participate in the October 2019 Ramadan. (Davis Decl., ECF No. 32-11.) Davis admits that Plaintiff "is a devout practicing believer in [MSTA];"; however, Davis contends that if he wanted to participate in the October Ramadan, Plaintiff's religion should have been declared as such and he should not have signed the Faith Group Affiliation Declaration form changing from Protestant to Islam/Muslim. (ECF No. 32 at 11:20.)

Plaintiff maintains that he informed Davis that he is MSTA and his sincere religious belief is Islam numerous times, yet Davis did not let him participate in Ramadan in violation of his rights.[3]

The court's preliminary inquiry is whether Plaintiff sincerely believes the conduct at issue—observance of Ramadan with MSTA in October and when it is observed by the Islam/Muslim inmates— is consistent with his faith.

Magistrate Judge William G. Cobb (now retired) and Chief District Judge Miranda Du confronted an issue similar to that presented here in *Meeks v. Sorsi*, 3:15-cv-00627-MMD-WGC. Meeks, like Plaintiff, was a member of MSTA and a Muslim. He brought a civil rights complaint alleging that he was denied participation in Ramadan in June/July of 2015, and was denied observance of holy days under MSTA. The defendants argued that Plaintiff had changed his faith group affiliation from Islam to MSTA, and it was "illogical" to allow an inmate to identify as a follower of more than one group. Therefore, they asserted that he could not assert a denial of participation in Ramadan in June/July when his identified faith group (MSTA) observed Ramadan in October. In essence, they argued he could not state a constitutional claim based on his asserted right to practice another religion's holy days. *Meeks v. Sorsi*, 3:15-cv-00627, MMD-WGC, 2017 WL 8942324 (D. Nev. Apr. 20, 2017), report and recommendation adopted in 2017 WL 3795789 (D. Nev. Aug. 31, 2017).

In Meeks, the defendants, like Davis here, did not expressly argue that Plaintiff did not have a sincerely held belief in the observance of Ramadan with both faith groups. The court finds, consistent with *Meeks*, that Davis implicitly argues this point when he contends that

---

[3] Plaintiff's response references the Religious Land Use and Institutionalized Persons Act (RLUIPA), but Plaintiff's action is not proceeding with a RLUIPA claim; therefore, the court has not considered those arguments.

11

Plaintiff cannot adopt the Ramadan observations of another faith group. *See Meeks*, 2017 WL 8942324, at * 6. As in *Meeks*, there is evidence in the record that Plaintiff believes he is obligated to observe Ramadan in October with MSTA, but also according to the lunar calendar with the Islam/Muslim faith. While Meeks provided a sworn statement to this effect, Plaintiff's evidence is in his kites and grievances where he reiterated to Davis that he was both a member of MSTA and adherent to Islam, and he sought to participate in Ramadan in May of 2019 with the Islam/Muslim faith group and in October with MSTA. Since Plaintiff has presented evidence that he has a sincere belief that observing Ramadan with MSTA and with the Islam/Muslim faith group is consistent with his faith, Plaintiff has raised a genuine dispute of material fact as to whether his sought-after religious exercise implicates the First Amendment. *See Jones,* 23 F.4th at 1145.

Next, the court will address whether there has been a substantial burden on Plaintiff's religious exercise.

Davis essentially argues that there was no substantial burden because Plaintiff's faith affiliation was Protestant, so he could not participate in the May/June Ramadan, and then he changed his faith affiliation to Islam/Muslim, so he could not participate in the MSTA Ramadan in October. Plaintiff, on the other hand, presents evidence that he proclaimed his nationality with MSTA and his religion is Islam and so he is obligated to observe Ramadan with the MSTA in October and along with the Islam/Muslim faith when they observe it according to the lunar calendar. Plaintiff repeatedly advised Davis of these facts, yet Plaintiff was still denied participation in either Ramadan.

The court finds Plaintiff has presented evidence that his religious practice was substantially burdened; therefore, Davis must demonstrate that his conduct is reasonably related

to legitimate penological interests. As in *Meeks*, Davis does not address the *Turner* factors so as to demonstrate that his conduct is reasonably related to legitimate penological interests. Instead, Davis merely argues that Plaintiff cannot adopt a faith observation of a faith group other than the one he has declared within the prison. Davis fails to explain, let alone provide evidence, regarding how not allowing Plaintiff to observe Ramadan with MSTA and with Islam/Muslims is reasonably related to any legitimate penological interests.

Davis's motion and reply reference Plaintiff's protective custody status as a factor in participation in religious observances, but there is no evidence in the record that Plaintiff was denied the opportunity to participate in Ramadan because of his protective custody status.

While the court can envision there may be *some* logistical difficulties in allowing an inmate to observe Ramadan with both groups, Davis did not include any evidence related to this issue in his motion or reply.

Having failed to meet his burden on this issue, Davis is not entitled to summary judgment as to Plaintiff's free exercise claim.

**B. Qualified Immunity**

Alternatively, Davis argues he is entitled to qualified immunity since he relied on AR 810, and was not on notice his conduct could violate the Constitution.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

"Whether a constitutional right is clearly established is a question of law for the court to decide." *Id.* at 968 (citing *Elder v. Holloway,* 510 U.S. 510, 511 (1994); *Morales v. Fry*, 873 F.3d 817, 825 (9th Cir. 2017)).

"It was well established in 2007, and remains so today, that government action that places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Jones v. Williams*, 791 F.3d 1023, 1033 (9th Cir. 2015) (citations omitted, finding that defendants were not entitled to qualified immunity as to the free exercise claim).

Additionally, taking the facts in the light most favorable to Plaintiff, a fact finder could conclude that Davis violated the Free Exercise Clause when he refused Plaintiff's requests to participate in Ramadan. Therefore, Davis is not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Davis's motion for summary judgment (ECF No. 32).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 4, 2022

                                                                  *C S D*
                                                                  _____
                                                                  Craig S. Denney
                                                                  United States Magistrate Judge